**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JOSE CARDOZA,

      Plaintiff,

v.                                             CV 09-1003 MV/WPL

UNITED OF OMAHA LIFE
INSURANCE COMPANY,

      Defendant.

**ORDER**

Jose Cardoza has sued United of Omaha Life Insurance Company under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, for failure to pay the full long-term disability (LTD) benefits he claims he is owed under a benefits plan United of Omaha issued to his employer, the Durango-McKinley Paper Company. Cardoza has requested that he be allowed to pursue limited discovery from United of Omaha, focusing on United of Omaha's conflict of interest as both administrator and payor of benefits under the plan and on the policies and procedures that United of Omaha has concerning how to process claims. (Doc. 14.) United of Omaha contends that the court must limit its review to the administrative record before United of Omaha at the time it made its decision, and argues that discovery seeking information to supplement the administrative record is not proper.

ERISA is "'an enormously complex and detailed statute.'" *Conkright v. Frommert*, 130 S.Ct. 1640, 1644 (2010) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 262 (1993)). Because Congress does not require employers to establish employee benefit plans, ERISA represents a "careful balancing" between encouraging the creation of such plans and ensuring that employees

receive fair and prompt enforcement of their rights under benefit plans. *Id*. at 1649. Although ERISA

"provides a detailed and comprehensive set of federal regulations governing the provision of

benefits to employees by employers," *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1200 (10th

Cir. 2002), it has left many difficult issues to be addressed by the courts, and the circuit courts have

had major disagreements about how to resolve them, Kathryn J. Kennedy, *Judicial Standard of*

*Review in ERISA Benefit Claim Cases*, 50 AM. U. L. REV. 1083, 1086 (2001).

For example, ERISA does not set out the appropriate standard of review for actions under

29 U.S.C. § 1132(a)(1)(B) when employees challenge benefit eligibility determinations made by the

plan administrator. In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court reviewed early

benefits cases that applied contract law and labor law before it settled on principles of trust law to

determine the appropriate standard of review. 489 U.S. 101, 110-11 (1989). The Court held that

district courts are to apply *de novo* review, which allows the court to substitute its decision for that

of the plan administrator, unless the plan gives the administrator discretionary authority to determine

eligibility for benefits or to construe the terms of the plan, in which case the more deferential abuse

of discretion standard applies. *Id*. at 115. Even with this guidance, "[t]he circuits vary as to what

plan language shifts from the de novo standard and, if shifted, how and when to apply the more

deferential standard of review, [and they] disagree as to the application of a more deferential

standard of review if the plan administrator is operating under a conflict of interest." Kennedy,

*supra*, at 1086.

ERISA also does not address the proper scope of discovery. Cardoza makes the remarkable

assertion that the Tenth Circuit has not "specifically spoken" on the issue of discovery in ERISA

cases, and cites district court cases in this circuit and cases from other circuits in support of his quest

for discovery. (*See* Doc. 15 at 13, 14-20.) In contrast, the Tenth Circuit has repeatedly addressed the

proper scope of discovery in ERISA cases, and citations to cases from outside the circuit are of scant benefit because of the conflict between the circuits on this issue.

The circuits have struggled with the appropriate scope of discovery when district courts review administrators' decisions under either the *de novo* or abuse of discretion standards. *See* Kennedy, *supra*, at 1166-67; *see also* Elizabeth J. Bondurant, *Standard of Review and Discovery After Glenn: The Effect of the Glenn Standard of Review on the Role of Discovery in Cases Involving Conflicts of Interest*, 77 DEF. COUNS. J. 120, 121 (2010). When a court is reviewing a plan administrator's decision for abuse of discretion, a majority of the circuits agree that the district court is limited to the evidence contained in the administrative record, which are the materials compiled by the administrator in the course of making its decision. *See Hall*, 300 F.3d at 1201; Kennedy, *supra*, at 1166-67. The circuits are split on the proper scope of evidentiary review in *de novo* cases. One circuit prohibits the introduction of evidence outside the administrative record, another circuit takes the opposite position and allows any party to submit additional evidence outside the administrative record, while "[m]ost circuits have adopted rules somewhere in between these extremes, allowing the admission of additional evidence" in limited circumstances. *Hall*, 300 F.3d at 1201; *see also* Kennedy, *supra*, at 1167-68.

The Tenth Circuit agrees with the majority of the other circuits that when a court is reviewing a plan administrator's decision for abuse of discretion, the court is limited to the administrative record. *See Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1011(10th Cir. 2008); *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 998, 1003 (10th Cir. 2004); *Hall,* 300 F.3d at 1201; *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 823-24 (10th Cir. 1996). In 2002 the Tenth Circuit adopted the intermediate position to ordinarily restrict *de novo* review to the administrative record. *Hall*, 300 F.3d at 1202. The district court may supplement the administrative record when

circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review, but the circuit emphasized that "it is the unusual case in which the district court should allow supplementation of the record." *Id*. The circuit held that the following exceptional circumstances could warrant the admission of additional evidence: (i) claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; (ii) the availability of very limited administrative review procedures with little or no evidentiary record; (iii) the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; (iv) instances where the payor and the administrator are the same entity and the court is concerned about impartiality; (v) claims which would have been insurance contract claims prior to ERISA; and (vi) circumstances in which there is additional evidence that the claimant could not have presented in the administrative process. *Id*. at 1203. Even in these circumstances, however, district courts are not required to admit additional evidence because the court may conclude that the case can be properly resolved on the administrative record without putting the parties to additional delay and expense. *Id.*

In *Firestone*, the Supreme Court recognized that an administrator may have a possible or actual conflict of interest when making benefit determinations under the plan, and directed that courts should weigh that conflict as a factor in determining whether the administrator has abused its discretion. 489 U.S. at 115. Two years ago, in *Metropolitan Life Ins. Co. v. Glenn*, the Supreme Court held that an insurance company that both administers an ERISA benefit plan and pays benefits under the plan has a conflict of interest, and reaffirmed its holding that the conflict should "be weighed as a 'factor in determining whether there is an abuse of discretion.'" 128 S.Ct. 2343, 2350 (2008) (quoting *Firestone*, 489 U.S. at 115). Such a conflict does not change the standard of review from abuse of discretion to *de novo*, and the Court emphasized that it did not want to adopt

4

a rule "that in practice could bring about near universal review by judges *de novo—i.e.*, without deference—of the lion's share of ERISA plan claims denials." *Id.* The Supreme Court further did not believe that courts should create special burden-of-proof rules, or other special procedural or evidentiary rules, that focus narrowly on an insurer's conflict of interest because "conflicts are but one factor among many" that a court must take into account.[1] *Id.* at 2351.

Since *Firestone* and *Glenn*, courts have attempted to modify ERISA's standard of review in conflict of interest contexts, but the circuits do not agree how to do so. *See* Kennedy, *supra*, at 1146; Bondurant, *supra*, at 131. Some district courts limit their review to the administrative record; other courts permit discovery whenever the plaintiff alleges the administrator has a conflict of interest; and other courts require a threshold showing that bias affected the administrator's decision before the court will permit discovery. *See* Bondurant, *supra*, at 131. Further, "[w]ithin these different standards, some courts have allowed expansive discovery to all information that would be 'relevant' to a conflict question, while others stipulate that discovery must be narrowly tailored." *Id*.

Some district courts in the Tenth Circuit have allowed discovery in ERISA cases, both before and after *Glenn*. The cases decided recently conclude that the Supreme Court's decision in *Glenn* implicitly allows a plaintiff to pursue discovery into the administrator's conflict of interest, even if not into the merits of the underlying claim. *See Carberry v. Metro. Life Ins. Co.*, No. 09-cv-02512, 2010 WL 1435543 (D. Colo. Apr. 9, 2010); *Almeida v. Hartford Life and Acc. Ins. Co.*, No. 09-cv-01556, 2010 WL 743520 (D. Colo. Mar. 2, 2010); *Kohut v. Hartford Life and Acc. Ins. Co.*, No. 08-cv-00669, 2008 WL 5246163 (D. Colo. Dec. 16, 2008). Earlier cases allowed discovery into the

---

[1] The Court implicitly rejected the burden shifting approach adopted by the Tenth Circuit in *Fought*, which required a plan administrator with a conflict of interest to prove the reasonableness of its decision under an arbitrary and capricious standard.

procedure the administrator used in reaching its decision, including whether the administrator obtained the necessary information to make its decision, whether those who compiled the record followed the proper procedure, and whether the administrative record is complete. *See Johnson v. Baxter Healthcare Corp.*, CIV 05-357 JH/RLP (D.N.M. Feb. 1, 2006); *Buchanan v. Reliance Standard Life Ins. Co.*, 5 F. Supp. 2d 1172, 1181 (D. Kan. 1998); *Caldwell v. Life Ins. Co. of N. Am.*, 165 F.R.D. 635, 637 (D. Kan. 1996).

However, many other courts in the circuit have refused to allow parties to pursue discovery outside the administrative record. *See Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1309 (10th Cir. 2007) ("Today we again emphasize that ERISA policy strongly disfavors expanding the record beyond that which was available to the plan administrator."); *Chambers*, 100 F.3d at 823-24; *Kaus v. Standard Ins. Co.*, No. 97-3378, 1998 WL 778055, at *3 (10th Cir. Nov. 5, 1998) (unpublished); *Lafayette v. Cobb*, 385 F. Supp. 2d 1162, 1166-67 (D.N.M. 2005); *Fought v. UNUM Life Ins. Co. of Am.*, CIV 01-124 PK/LFG (D.N.M. February 6, 2002).

United of Omaha admits that, as both plan administrator and payor of benefits under the LTD plan, it has a conflict of interest in this case. (Doc. 16 at 3.) It also claims that the plan gives it discretionary authority to determine eligibility for LTD benefits. (*Id.* at 4.) Cardoza does not dispute this assertion. Thus, the district court may apply an arbitrary and capricious standard of review[2] when considering United of Omaha's decision and will reduce its deference to the administrator's decision in proportion to the seriousness of the conflict or if a serious procedural irregularity exists. *See Fought*, 379 F.3d at 1006. The court may decide to apply *de novo* review if there were procedural irregularities present and the administrator did not substantially comply with the

[2] The Tenth Circuit uses the terms "abuse of discretion" and "arbitrary and capricious" interchangeably in ERISA cases. *Weber*, 541 F.3d at 1011 n.10.

procedural requirements. *See La Asmar v. Phelps Dodge Corp. Life, Acc., Death & Dism. and Dep. Life Ins. Plan*, Nos. 07-1267, 07-1286, 2010 WL 1794437, at *4-5 (10th Cir. May 6, 2010).

In his Reply, Cardoza claims that two such irregularities exist. (Doc. 20 at 2-6.) First, he claims that United of Omaha "sought to gerrymander the Administrative Record" when it denied the existence of any internal guidelines or protocols that address how his earnings should be calculated. (*Id*. at 4.) Second, he claims that United of Omaha produced a "new" version of the LTD policy with substantially reduced benefits after it had produced the administrative record with the original version. (*Id*. at 5.) In support of this claim, he attached two Certificate Booklets that he asserts have identical titles but many differences in substantive terms, including the maximum amount of monthly benefits and whether vocational rehabilitation benefits are available. These irregularities, Cardoza claims, justify discovery about which version of the LTD plan was issued to Cardoza's employer and into United of Omaha's conflict of interest.

Cardoza's second claim may be disposed of quickly. Cardoza asserts that both Certificate Booklets have identical titles and that the differences in their substantive portions represent cost-saving changes to the LTD policy that demonstrate the existence and scope of United of Omaha's conflict of interest. Yet Cardoza's major premise is incorrect: The Certificate Booklet titles are not identical. One booklet covers hourly employees with annual earnings over $40,000, while the other booklet covers hourly employees with annual earnings under $40,000. (*See* Doc. 20 Exs. 9 & 10.) Since Cardoza claims his LTD benefits should be based on his 2007 salary of $61,881—which included both his hourly salary and the "per-ton" commission he earned as a truck driver—while United of Omaha contends it should be based solely on his salary of $24,000, Cardoza was entitled to, and has received, both booklets. Thus, their production does not constitute a procedural irregularity that would justify discovery.

Cardoza's first claim has more merit. In January of 2008 Cardoza requested that United of Omaha produce copies of all documents that it relied on in making Cardoza's benefits determination. When United of Omaha did not produce those documents, in April of 2008 Cardoza again requested them and also requested that United of Omaha provide its internal guidelines, protocols and procedures. Bobbi Burns-Bierwirth, an Appeals and Resolution Specialist, stated in May and June of 2009 that no such documents existed. United of Omaha belatedly admitted that these statements were inaccurate and produced certain portions of Mutual of Omaha's Disability Information Learning Library.[3] Cardoza was entitled to the internal guidelines, policies and procedures under 29 C.F.R. § 2560.503-1(h)(2)(iii). Given these circumstances, I believe that limited discovery to ensure that Cardoza has received all the materials to which he is entitled is appropriate.[4]

Cardoza's main argument is that he is entitled to discovery into the extent of United of Omaha's conflict of interest. If the district court applies an arbitrary and capricious standard of review to United of Omaha's decision, Cardoza is not entitled to discovery into the conflict. The Tenth Circuit reaffirmed after the Supreme Court's decision in *Glenn* that district courts are limited to the administrative record when reviewing a plan administrator's decision under the arbitrary and capricious standard, even when the administrator has a conflict of interest. In *Weber v. GE Group Life Assur. Co.,* the Tenth Circuit concluded that its "sliding scale approach" to the arbitrary and capricious standard, which decreases the level of deference given to the administrator's decision when the administrator has a conflict of interest, is consistent with the Supreme Court's decision in *Glenn*. 541 F.3d at 1010-11. In *dicta*, the Circuit reaffirmed that when reviewing a plan

[3] United of Omaha is a wholly-owned subsidiary of Mutual of Omaha, and United of Omaha's claims personnel have access to this document.

[4] The district judge will, of course, decide whether the evidence is admissible at trial.

8

administrator's decision under the arbitrary and capricious standard, "the federal courts are limited

to the administrative record." *Id*. at 1011 (quoting *Fought*, 379 F.3d at 1003). *See also Lafayette*, 385

F. Supp. 2d at 1167 ("While the Court may exercise its discretion to supplement the administrative

record where it conducts a *de novo* review, there is no authority for doing so where the Court

employs a deferential standard of review, even where the standard is changed by the insurer's

conflict of interest.")

If the district court applies *de novo* review, the circuit has cautioned that courts are not to

"automatically allow the admission of additional evidence . . . simply because the administrator and

payor are the same party." *Hall*, 300 F.3d at 1205. If the court adopted a blanket rule allowing

additional evidence "then it will not be the unusual case in which additional evidence is admitted."

*Id*. Additional evidence concerning a possible conflict of interest should be admitted only to the

extent that the plaintiff can show "that it is relevant to the conflict of interest and that the conflict

of interest in fact requires the admission of the evidence." *Id*.

A plaintiff cannot seek to admit evidence concerning the administrator's conflict of interest

unless it can discover information about that conflict, and some of the Supreme Court's discussion

in *Glenn* suggests that discovery is appropriate to develop that information. For example, the Court

stated that an inherent conflict of interest should prove more important where "an insurance

company administrator has a history of biased claims administration," and noted that such conflict

would be less important "where the administrator has taken active steps to reduce potential bias and

to promote accuracy, for example, by walling off claims administrators from those interested in firm

finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective

of whom the inaccuracy benefits." 128 S.Ct. at 2351. In his concurrence, Justice Roberts noted that

while evidence of the administrator's conflict of interest may appear on the face of the plan, "it may

[also] be shown by evidence of other improper incentives, or it may be shown by a pattern or practice of unreasonably denying meritorious claims." *Id*. at 2354. Justice Kennedy, in his dissent, criticized the majority for failing to remand the case so that MetLife could introduce evidence that it had employed structural safeguards to avoid a conflict of interest. *Id*. at 2356.

As the First Circuit stated, "The majority opinion in *Glenn* fairly can be read as contemplating some discovery on the issue of whether a structural conflict has morphed into an actual conflict," although such discovery "must be allowed sparingly and, if allowed at all, must be narrowly tailored so as to leave the substantive record essentially undisturbed." *Denmark v. Liberty Life Assur. Co. of Boston*, 566 F.3d 1, 10 (1st Cir. 2009). In considering whether discovery should be allowed, it is important to remember that the issue before the court is fairly simple and that the administrative record is lengthy, containing four hundred and sixty pages. In addition, United of Omaha provided some information in the Affidavit of Theresa Woolford about structural safeguards for its claims analysts to avoid a conflict of interest, and also belatedly provided its internals guidelines that discuss the process of determining the amount of benefits payable under a disability policy. While this information could be sufficient to preclude discovery on a structural conflict of interest, *see id*., because of the procedural irregularity when United of Omaha denied it had internal guidelines, Cardoza is entitled to additional information to determine whether United of Omaha's structural conflict of interest has morphed into an actual conflict of interest.

Although Cardoza claims he wishes to pursue "limited" discovery, a cursory review of his requests belies that assertion. Cardoza seeks to depose "only" six individuals and to conduct one Rule 30(b)(6) deposition, and he has also propounded wide ranging interrogatories and requests for production. These discovery requests are not properly limited to exploring the conflict of interest issue and whether Cardoza has received all internal guidelines, protocols and procedures that apply

10

to Cardoza's benefit determination.

Cardoza may take one Rule 30(b)(6) deposition of an officer, director, employee or agent of United of Omaha on the following topics:

1. Administrative processes and safeguards designed to insure and verify that benefit claim determinations are made in accordance with governing Plan documents.

2. How to determine the benefits payable under a LTD plan.

3. How benefits personnel are appointed and how they are compensated, whether the benefit decision makers' determinations are reviewed, and whether the compensation of the benefit decision makers are in any way related to their determination of claims.

4. All policies, procedures and evaluations on which United of Omaha relied in determining the calculation of LTD benefits.

5. Why United of Omaha claimed that no internal guidelines, protocols and procedures existed concerning the determination of Cardoza's benefits payable under the LTD plan.

Cardoza may also submit up to ten interrogatories and up to fifteen requests for production that are limited to the conflict of interest issue and to whether United of Omaha has produced all internal guidelines, protocols and procedures that apply to Cardoza's benefit determination.

IT IS SO ORDERED.

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.          11