IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE CARDOZA,

       **Plaintiff**

vs.                                                              **No. CV 09-1003 MV/WPL**

UNITED OF OMAHA LIFE
INSURANCE COMPANY,

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the parties' cross-motions for summary judgment.  Plaintiff filed his motion for summary judgment **[Doc. No. 32]** on October 18, 2010, and filed his Notice of Completion on May 4, 2011.  Defendant United of Omaha Life Insurance Company (hereinafter "United of Omaha") filed its motion for judgment based on the administrative record **[Doc. No. 31]** on October 18, 2010, and filed its Notice of Completion on April 28, 2011.

This is a case arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001-1461 ("ERISA").  ERISA permits a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B).  In his Second Amended Complaint, Plaintiff contends United of Omaha has failed to pay him long-term disability (LTD) benefits in the correct amount under the terms of Durango-McKinley Paper Company's (hereinafter "Durango-McKinley") LTD

insurance policy.  Plaintiff moves the Court for summary judgment, arguing United of Omaha improperly calculated his "Basic Monthly Benefits" under the LTD policy when (1) United of Omaha based its calculations on the premium Durango-McKinley paid rather than on Plaintiff's actual earnings and (2) excluded his tonnage earnings on the basis that it was "extra compensation" and thus excluded under the LTD policy.  Pl.'s Mot. Summ. J. at 14-15 (Doc. No. 32). wh

United of Omaha moves the Court for judgment based on the administrative record, arguing its calculation of Plaintiff's LTD benefits is well supported and not an abuse of discretion.  United of Omaha also counterclaimed, arguing it is entitled to judgment on its counterclaim for repayment of overpaid benefits.

Because the Court finds that United of Omaha's decision to exclude Plaintiff's tonnage pay in calculating Plaintiff's LTD benefits was arbitrary and capricious under the terms of the LTD policy, the Court will **GRANT** Plaintiff's Motion for Summary Judgment.  Accordingly, the Court will **DENY** United of Omaha's Motion for Judgment Based on the Administrative Record.  The Court also finds that the administrative record does not show United of Omaha is entitled to judgment on its counterclaim for repayment of overpaid benefits as to Plaintiff's short-term disability (STD) benefits.  However, the Court finds that United of Omaha is entitled to a judgment against Plaintiff for reimbursement of any overpayment, if any, made due to Plaintiff's receipt of Social Security Disability benefits.

## I.  Background

Plaintiff worked for Durango-McKinley until June 27, 2008, when he was involved in a vehicular accident.  AR000120.  As a result of the accident, Plaintiff became physically unable

2

to do the normal duties of his job and thus met the definitions and requirements for receiving benefits from United of Omaha commencing June 28, 2008.  AR000221.

United of Omaha is an employee group welfare benefit plan governed by ERISA. AR000047.  United of Omaha provides benefits, at a level based upon rates of pay, for workers who become disabled.  AR000012.  Durango-McKinley's LTD policy grants United of Omaha the discretion to construe and interpret the policy.  AR000048.  Moreover, United of Omaha acts as claims administrator of United of Omaha.  *Id.*  As both plan administrator and payor of benefits under the LTD policy, United of Omaha admits it has a conflict of interest in this case. *See* Doc. No. 16 at 3.

United of Omaha determined Plaintiff was eligible for group STD benefits beginning in July 2008.  Compl. ¶10.  Plaintiff's received STD benefits in the amount of $714.02 for 12 weeks, the maximum duration of that benefit.  *Id.* ¶11.  The STD insurance policy provides that if Plaintiff is "Disabled and earning less than 20% of [his] Weekly Earnings, the Weekly Benefit while Disabled is the lesser of: 60% of [his] Weekly Earnings, less Other Income Benefits; or the Maximum Weekly Benefit.  The Maximum Weekly Benefit is $1,250, less any other Income Benefits."  AR000323.

Plaintiff's $714.02 weekly STD benefit was 60% of his average weekly earnings of $1,190.00.  The STD policy defines "Weekly Earnings" as follows:

> Weekly Earnings means Your average gross weekly earnings received from the Policyholder during the Calendar Year immediately prior to the year in which Your Disability began, or, if employed for a period less than one year, Your average gross weekly earnings for the number of weeks worked during that period.

> It includes commissions, and overtime pay received from the Policyholder.  It also includes employee contributions to deferred compensation plans.  It does not include Policyholder contributions to deferred compensation plans, bonuses, shift differential, or other extra compensation received from the Policyholder.

3

**Note:** Scheduled overtime pay not to exceed a total (base and overtime) of 48 hours per week.

AR 000325.

On July 11, 2008, United of Omaha sent Jill Lopez, Durango-McKinley's Human Resources Manager, a STD Claim Form.  AR 000441.  In response to a question regarding Plaintiff's "weekly earnings as defined by the Plan," Ms. Lopez wrote "$982.50," and drew an asterisk next to the question, referring the reader to a second asterisk drawn below.  *Id.*  Next to the second asterisk, Ms. Lopez wrote:

> *Jose Cardoza gets paid $12.02 hrly, he has a tonnage rate of $5.25, $7.25.  He also has a out of town rate of $30.00 per ton.
>
> 40 hrs at $12.02= $480.80
>
> 19644 tons at $7.25= $1424.19
>
> 2 tons at $30.00= $60.00
>
> Divide by 2 to get a wkly total.

*Id.*  Accordingly, United of Omaha calculated Plaintiff's STD Weekly Earnings by using Plaintiff's hourly pay, tonnage rate, and out-of-town per-ton rate.  *Id.*  Plaintiff, as a truck driver, was paid "tonnage" earnings for the loads he picked up and those earning comprised a majority of his total earnings.

On August 18, 2008, Andy Ostbloom, a United of Omaha Client Representative, emailed Sherie Byrd, a United of Omaha Claims Analyst, the following message:

> **Per the policyholder**, this employee made $61,000 for the calendar year 2007.  On 1/1/08, the [employ]ee received a raise and is now at $982.50 per week.  I have sent an email to maintenance to have Compass updated.

AR 000415 (emphasis added).

4

Once Plaintiff exhausted the 12 weeks of STD benefits, Plaintiff was entitled to receive LTD benefits.  Compl.¶12.  The LTD policy provides if Plaintiff is "Disabled and earning less than 20% of [his] Basic Monthly Earnings, the Monthly Benefit while Disabled is the lesser of: 60% of [his] Basic Monthly Earnings, less Other Income Benefits; or the Maximum Monthly Benefit.  The Maximum Monthly Benefit is $2000, less any Other Income Benefits." AR000012.

The definition of Monthly Earnings in the LTD policy is as follows:

Basic Monthly Earnings means Your average gross monthly earnings received from the Policyholder and verified by premium We have received during the Calendar Year immediately prior to the year in which Your Disability began, or, if employed for a period less than one year, Your average earnings for the number of months worked during that period.

It includes commissions, and overtime pay received from the Policyholder.  It also includes employee contributions to deferred compensation plans.  It does not include Policyholder contributions to deferred compensation plans, bonuses, shift differential, or other extra compensation received from the Policyholder.

**Note**: Scheduled overtime pay not to exceed a total (base and overtime) of 48 hours per week.

Calendar Year means the 12-month period from January 1 through December 31.

AR000014 (emphasis in original).

On September 15, 2008, United of Omaha sent Jill Lopez a form entitled "LONG TERM DISABILITY CLAIM INFORMATION (to be completed by Employer)."  AR000409-000411. The form directed the employer to fill in Plaintiff's "Basic Monthly Earnings" and included the definition of Basic Monthly Earnings from the LTD policy for reference.  AR 000411. Additionally, the form required the employer to fill in Plaintiff's regularly scheduled hours per week and hours per day.  *Id.*  In response to the question regarding Plaintiff's regularly scheduled hours, Ms Lopez wrote "N/A" and noted, "**He gets paid by the <u>Ton</u> Not Hours**."

5

AR000413 (emphasis added).  Ms. Lopez listed Plaintiff's Basic Monthly Earnings as $6,050.00.

AR000413.  Ms. Lopez completed and faxed the form to United of Omaha on the same day.

AR000412-000413.

Plaintiff's gross pay for 2007 was $61,881.47.  AR000134.  Plaintiff's earnings

statements categorized his earnings as follows: (1) Regular Pay; (2) Personal Vacation; (3)

Vacation Sold; (4) Float Holiday; (5) Holiday Off; (6) Per Ton; (7) Per Ton Rate B; (8) Per Ton

Rate C; and (9) Special.  AR000134-000158.  During 2007, $2,402.20 of the $61,881.47 gross

earnings was Regular Pay, which is approximately 3.9% of his 2007 gross earnings.  In addition,

during 2007, $55,970.19 of the $61,881.47 gross earnings was Per Ton, Per Ton Rate B, and Per

Ton Rate C, which is approximately 90.4% of his 2007 gross earnings.  AR000134.

United of Omaha determined Plaintiff's Basic Monthly Earnings for LTD benefits were

$2,022.80.  AR000236.  United of Omaha explained it had arrived at this amount because the

policyholder, in this case Durango-McKinley, had paid premiums on the basic annual earnings

of $24,273.60.  Dividing this amount by 12 months, United of Omaha arrived at the total Basic

Monthly Earnings of $2,022.80.  AR000211.  Accordingly, from September 27, 2008 through

July 26, 2009, Plaintiff received LTD benefits in the amount of $1,213.68 per month (60% of

$2,022.80).  AR000221.

On January 26, 2008, Plaintiff's counsel wrote Tonia Holbrook, Senior Disability Claims

Resolution Analyst for United of Omaha, requesting "copies of all pertinent documents relied on

in making your benefit determination.  AR000208.

On February 10, 2010, Plaintiff's counsel received a letter from Ms. Holbrook.  The letter

stated, in pertinent part:

In your previous letter, dated January 8, 2008 and received January 12, 2009, you did include check stubs dated for the period of May 1, 2008 through July 10, 2008. **The check stubs showed Mr. Cardoza received extra compensation under the categories of Per Ton Rate A, Per Ton Rate B, and Per Ton Rate C**. The earnings for the time frame you provided and the extra compensation cannot be considered as part of the Basic Monthly Earnings specified in the policy definition.

**It does appear there is a discrepancy in the way benefits were calculated under his short-term disability policy GUG 757H. Due to this, Mr. Cardoza's short-term disability claim is being reviewed to determine if an overpayment has occurred**.

AR000203 (emphasis added).

On January 14, 2009, Ms. Holbrook sent Plaintiff's counsel a letter notifying him United of Omaha was rejecting Plaintiff's request to recalculate his LTD benefits. AR000211-AR000213. After setting forth the definition of Basic Monthly Earnings as defined in the LTD policy, Ms. Holbrook stated:

Based on the information we have received, Mr. Cardoza became disabled on June 28, 2008. We therefore used his Basic Monthly Earnings from the year 2007. The Policyholder (Durango-McKinley) indicated and paid premium on the basic annual earnings of $24,273.60. When you divide this amount by 12 months, the total Basic Monthly Earnings are $2,022.80.

\*\* \*\* \*\*

**Per the definition of the Basic Monthly Earnings from the policy, we do not include other extra compensation the claimant received from the Policyholder in our calculation of Basic Monthly Earnings. In addition, the Policyholder did not include the other extra compensation in the premiums they paid on Mr. Cardoza's coverage.**

\*\* \*\* \*\*

You have the right to receive, upon written request, a copy of all pertinent documents relied upon in making a benefit determination. This would include, but is not limited to, any internal guidelines, protocols and procedures if used.

AR000211-000212 (emphasis added).

In the February 10, 2009 letter, Ms. Holbrook also addressed how United of Omaha determined  Plaintiff's LTD benefits, stating:

This letter is in response to your letter dated January 26, 2008, received January 29, 2009, regarding policy GLTD 757H.

Enclosed is copy of the four payments made to Mr. Cardoza under the Policy GLTD 757H, see enclosure B.  Enclosure A verifies the employer's report of income and what premium was received for the calendar year 2007.

> **Basic Monthly Earnings** means Your average gross monthly earnings received from the Policyholder and verified by premium We have received during the Calendar Year immediately prior to the year in which Your Disability began, or, if employed for a period less than one year, Your average earnings for the number of months worked during that period.

> It includes commissions, and overtime pay received from the Policyholder.  It also includes employee contributions to deferred compensation plans.  It does not include Policyholder contributions to deferred compensation plans, bonuses, shift differential, or other extra compensation received from the Policyholder.

> **Note**: Scheduled overtime pay not to exceed a total (base and overtime) of 48 hours per week.

> **Calendar Year** means the 12-month period from January 1 through December 31.

Per the policy, we used his earnings reported by his employer for the calendar year 2007.  Mr. Cardoza's employer indicated his annual earnings for 2007 were $24,273.60.  This averages out to $11.67 per hour.  **The employer did state that Mr. Cardoza received extra compensation on a tonnage rate of $5.25 and $7.25 per ton and an out of town rate of $30.00 per ton.**  As stated in the policy, Basic Monthly Earnings does not include Policy contributions to deferred compensation plans, bonuses, shift differential, or other extra compensation received from the Policyholder.  **The tonnage rates the employer paid Mr. Cardoza are considered other extra compensation received from the Policyholder**.

AR000202 (emphasis added).  Enclosure A only reflects Plaintiff's "Basic Salary Hours Worked."  AR000204.  In fact, Plaintiff's counsel sent Ms. Holbrook a letter on April 22, 2009 explaining the hourly rate, stating:

> Although enclosure A that you sent me along with your February 10 letter purports to show that Mr. Cardoza's basic salary/hours worked was only $24,273.60.

Mr. Cardoza was actually paid $61,881.47 for calendar year 2007. This is the correct figure that should be used in determining his basic monthly earnings paid. The money paid for Per Ton Rate was a normal part of his earnings. It's the combination of the hourly rate and the Per Ton Rate that reflects the true wages for Mr. Cardoza. The hourly rate is for use when [the truck drivers] are at the depo. Basically, it pays the truck drivers when they are doing paperwork or they don't have any loads to pick up. This is not what the company thought they were providing in disability insurance for their truck drivers because they all make around $60,000 a year like Mr. Cardoza.

I am sending to you the documentation generated by his employer that show that this was his actual pay and salary for calendar year 2007 and that this should have been the basis for the calculation [ ] of his basic monthly earnings. (Earning statements pages 1-25 attached as exhibit 1 to this letter).

AR000132. In the same letter, Plaintiff's counsel noted:

Although I asked in my letter dated January 26, 2009, apparently **I did not receive copies of all pertinent documents relied on by you in making your previous benefit determination.  In addition, I did not receive internal guidelines, protocols, and procedures.  Could you, once again review your file and please provide me with any such documents, internal guidelines, protocols, and procedures**.

*Id.* (emphasis added)

On May 19, 2009, Bobbi Burns-Bierwirth, an Appeals and Resolutions Specialist for

United of Omaha, wrote Plaintiff's counsel. Ms. Burns-Bierwirth stated:

We have received your request to re-evaluate the benefit calculation for Mr. Cardoza's disability claim. A complete copy of his administrative claim file and policy will be sent under separate cover. **Regarding your request for internal guidelines, protocols, and procedures, please be advised that none exist.** Each claim is unique and handled on an individual basis. Our determinations are based on the policy provisions, the documentation provided to us for support of the disability (i.e., medical records, claim forms, etc.) and the regulations set forth by the state and ERISA (Employee Retirement Income Security Act).

AR000114.

On June 5, 2009, Ms. Burns-Bierwirth sent Plaintiff's counsel a letter regarding his

appeal for LTD benefits, stating:

We have completed our review of your appeal for Long-Term Disability benefits under policy GLTD 757H.   Based on our review, we have determined that calculation of Mr. Cardoza's basic month earnings was appropriate.  Therefore, we are upholding our original determination, and no additional benefits are payable.

**   **   **

Mr. Duhigg, the information you have provided would not change our previous decision regarding the calculation of Mr. Cardoza's basic monthly earnings.

You indicated in your letter that you were not provided with all copies of pertinent documents because you did not receive any internal guidelines, protocols, and procedures.  **Regarding your request for internal guidelines, protocols, and procedures, please be advised that none exist**.  Each claim is unique and handled on an individual basis.  Our determinations are based on the policy provisions, the documentation provided to us, (i.e., earnings documentation form (sic) the employer, claims forms, premium verification, etc.) and the regulations as set forth by the state and ERISA (Employee Retirement Income Security Act).  Our benefit calculations were considered based on the information received from Mr. Cardoza's employer and the provisions of the policy under which Mr. Cardoza was covered.

**   **   **

Per the provisions of the policy, we use the average gross monthly earnings received from the Policyholder and verified by premiums we have received during the Calendar Year immediately prior to the year in which his disability began.  Since Mr. Cardoza's disability began in 2008, we would use the average of his gross monthly earnings from 2007 **and** verified by premium we have received.  We have received premiums from Mr. Cardoza's employer based on an annual salary of $24,273.60 for an hourly employee.  As explained in our letter dated February 10, 2009, the per ton rate would be considered extra compensation.  It is not part of his hourly salary, and his employer did not pay premiums for his extra compensation.

While you have indicated that Mr. Cardoza's employer was not aware that they were only providing compensation for his earnings based on his hourly wages, they did insure Mr. Cardoza as an hourly employee making under $40,000.00 per year and they only paid premiums for that portion of the earnings.  **If his employer wants to cover the extra compensation for their hourly employees, they would be responsible for paying the back premiums for all of the hourly employees like Mr. Cardoza in Class 5, and per information from our underwriting department, they were not willing to do so.**

AR000111-000113 (emphasis added).

10

United of Omaha had the right to change premium rates on or after the date there was a change in benefits or eligibility under the Policy.  AR00002.

## II.  Standard of Review

In an ERISA case, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."  *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan,* 605 F.3d 789, 796 (10th Cir. 2010)(quoting *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 235 (1st Cir. 2006)).  "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113, 109 S.Ct. 948, 956 (1989)(internal citations and quotations omitted).  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956-57.  "[I]n respect to discretionary claims processing," [ERISA] "underscores the particular importance of accurate claims processing by insisting that administrators provide a full and fair review of claim denial." *Metropolitan Life Ins. Co. v. Glenn*, – U.S.– , 128 S.Ct. 2343, 2350 2008)(internal citations omitted).

In this case, there is no dispute that the LTD policy provides the administrator with discretionary authority to determine eligibility for benefits and construe the terms of the policy.  AR 000006.  Thus, the de novo standard of review is not applicable, and the Court must apply

the "arbitrary and capricious" standard of review.[1]  *Rekstad v. U.S. Bancorp*, 451 F.3d 1114,

1119 (10th Cir. 2006).  Under the arbitrary and capricious standard, the Court's "review is limited

to determining whether the interpretation of the plan was reasonable and made in good faith."

*Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 825-26 (10th Cir. 2008)(internal alterations,

quotations omitted).  "Certain indicia of an arbitrary and capricious denial of benefits include

'lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the

fiduciary.'" *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1358 (10th Cir.

2009)(quoting *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir.2002).

Substantial evidence is "such evidence that a reasonable mind might accept as adequate to

support the conclusion reached by the decision-maker.  Substantial evidence requires more than

a scintilla but less than a preponderance." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377,

382 (10th Cir.1992) (quotations, citations, and alterations omitted).  The party arguing for the

more deferential standard of review has the burden to establish that the Court should review its

benefits decision at issue under the arbitrary and capricious standard.  *LaAsmar,* 605 F.3d at 796.

However, "the possibility of an administrator operating under a conflict of interest,"

changes the analysis.  *Fought*, 379 F.3d at 1003.  "In such a situation, that 'conflict should be

weighed as a factor in determining whether there is an abuse of discretion.'"  *Weber*, 541 F.3d at

1010 (quoting *Glenn*, – U.S.–, 128 S.Ct at 2350).  Thus, the Court will weigh the conflict of

interest as a factor in the Court's abuse of discretion analysis, and the Court will weigh it more

---

[1] The Tenth Circuit treats the terms "arbitrary and capricious" and "abuse of discretion"
as interchangeable in this context.  *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1002-03
(10th Cir.2004), *abrogated on other grounds* by *Metro. Life Insurance v. Glenn*, – U.S. –, 128
S.Ct. 2343, 2351 (2008); *see also Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1011 n. 10
(10th Cir. 2008)(describing terms "arbitrary and capricious" and "abuse of discretion" as
interchangeable in this context).

or less heavily depending on the seriousness of the conflict.  *Murphy v. Deloitte & Touche Group Insurance Plan*, 619 F.3d 1151, 1158 n.1 (10th Cir. 2010).  The importance the Court attaches to the existence of a conflict of interest is proportionate to the likelihood that the conflict affected the benefits decision.  *Graham*, 589 F.3d at 1358.  As both plan administrator and payor of benefits under the LTD policy, United of Omaha admits it has a conflict of interest.  Thus, United of Omaha "may favor consciously or unconsciously, its interests over the interests of the plan beneficiaries."  *Fought*, 379 F.3d at 1003.

Plaintiff also contends the Court should apply a de novo standard of review due to serious procedural irregularities.  Plaintiff contends that United of Omaha's failure to provide him with copies of all pertinent documents relied upon in making its benefit determination and its insistence that none existed warrants a de novo review or the Court must "dial back" the deference if the Court chooses to apply an arbitrary and capricious standard of review.  United of Omaha later revealed that, in fact, such documents did exist.

In opposing a de novo standard of review, United of Omaha relies on an affidavit from Theresa Wolford, Director of Customer Service in the Clinical Services department of the Claims division.  Doc. No. 17-1, Wolford Aff. ¶1.  Ms. Wolford attested to the following pertinent facts: (1) "claims analysts are not allowed access to claim reserve information and are not provided actuarial or financial information regarding their claims handling or the effect of their claims handling on company financial results" and (2) "all claim analysts are physically segregated from the Premium, Sales, Underwriting, and Actuary departments, as well as Quality Auditors."  *Id.,* Wolford Aff.¶¶4-5.  Additionally, Ms. Wolford attested to the fact that "[c]laims personnel are paid a salary or hourly wage, and are not paid any incentive compensation based

on the payment or denial of claims" and "any bonus pay is based on company-wide performance." *Id.*, Wolford Aff. ¶6.

The Tenth Circuit "has on several occasions reviewed a benefits denial *de novo*, notwithstanding the fact that the Plan afforded the administrator discretion to make benefits determinations, where there were procedural irregularities in the administrator's consideration of the benefits claim." *LaAsmar,* 605 F.3d at 797. However, the Tenth Circuit has "applied the 'procedural irregularity' exception where the plan administrator either never issued a decision, or issued a decision 'substantially outside the time period within which the Plan vested it with discretion to interpret and apply the Plan.'" *Palmer v. Metropolitan Life Insurance Company*, 415 Fed.App'x 913, 917 (10th Cir. 2011)(unpublished). Plaintiff cites no authority that would trigger de novo review due to United of Omaha's failure to provide him with copies of all pertinent documents relied upon in making its benefit determination or its insistence that none existed. Moreover, United of Omaha met its burden of establishing that the Court should review its benefits decision at issue under a more deferential standard of review.

Finally, "in reviewing a plan administrator's decision under the arbitrary and capricious standard, [the federal courts] are limited to the administrative record– the materials compiled by the administrator in the course of making his decision." *DeGrado v. Jefferson Pilot Financial Ins. Co.*, 451 F.3d 1161, 1169 (10th Cir. 2006). Nonetheless, "without discovery, a claimant may not have access to the information necessary to establish the seriousness of the conflict. Similarly, the administrator may not be fully able to rebut a claim of conflict by showing that it 'has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances.'" *Murphy*, 619 F.3d at 1158 (quoting *Glenn*, 128 S.Ct. at 2351).

14

In this case, on June 2, 2010, the Honorable William P. Lynch granted Plaintiff the right to conduct limited discovery beyond the administrative record. *See* Doc. No. 23. Judge Lynch found Plaintiff was "entitled to additional information to determine whether United of Omaha's structural conflict of interest has morphed into an actual conflict of interest." Doc. No. 23 at 10. Specifically, Judge Lynch ruled Plaintiff could take one Rule 30(b)(6) deposition of an officer, director, employee or agent of United of Omaha on the following topics: (1) Administrative processes and safeguards designed to insure and verify that benefit claim determinations are made in accordance with governing Plan documents; (2) How to determine the benefits payable under a LTD plan; (3) How benefits personnel are appointed and how they are compensated, whether the benefits decision makers' determinations are reviewed, and whether the compensation of the benefit decision makers are in any way related to their determination of claims; (4) All policies, procedures and evaluations on which United of Omaha relied in determining the calculation of LTD benefits; and (5) Why United of Omaha claimed that no internal guidelines, protocols and procedures existed concerning the determination of Cardoza's benefits payable under the LTD plan. *Id.* at 11. Judge Lynch also allowed Plaintiff to submit up to ten interrogatories and up to fifteen requests for production, limited to the conflict of interest issue and whether United of Omaha had produced all internal guidelines, protocols and procedures that applied to Plaintiff's benefit determination.

## III.  Discussion

The issue before the Court is whether United of Omaha's decision to consider Plaintiff's "tonnage" pay "extra compensation" rather than his actual earnings and thus not include Plaintiff's tonnage pay in its calculation of LTD benefits was reasonable and made in good faith.

15

As discussed below, the Court finds that Omaha's decision was arbitrary and capricious and not made in good faith.

**A.  Short Term Disability Benefits**

The STD policy provides that if Plaintiff is "Disabled and earning less than 20% of [his] Weekly Earnings, the Weekly Benefit while Disabled is the lesser of: 60% of [his] Weekly Earnings, less Other Income Benefits; or the Maximum Weekly Benefit.  The Maximum Weekly Benefit is $1,250, less any other Income Benefits."   AR000323.  The STD policy defines "**Weekly Earnings**" as follows:

> Weekly Earnings means Your average gross weekly earnings received from the Policyholder during the Calendar Year immediately prior to the year in which Your Disability began, or, if employed for a period less than one year, Your average gross weekly earnings for the number of weeks worked during that period.
>
> It includes commissions, and overtime pay received from the Policyholder.  It also includes employee contributions to deferred compensation plans.  It does not include Policyholder contributions to deferred compensation plans, bonuses, shift differential, or other extra compensation received from the Policyholder.
>
> **Note:** Scheduled overtime pay not to exceed a total (base and overtime) of 48 hours per week.

 AR 000325.

Ms. Lopez reported Plaintiff's weekly earnings, as defined by the STD policy, were $982.50.  AR000441.  Ms. Lopez was very clear that Plaintiff was not paid by the hour and was clear as to how Plaintiff was paid.  Ms. Lopez wrote on the STD form:

> *Jose Cardoza gets paid $12.02 hrly, he has a tonnage rate of $5.25, $7.25.  He also
>
> has a out of town rate of $30.00 per ton.
>
> 40 hrs at $12.02= $480.80
>
> 19644 tons at $7.25= $1424.19

16

2 tons at $30.00= $60.00

Divide by 2 to get a wkly total.

*Id*.  Accordingly, United of Omaha calculated Plaintiff's STD Weekly Earnings by using

Plaintiff's hourly pay, tonnage rate, and out-of-town per-ton rate.  *Id.*

Under the STD policy's definition of "Weekly Earnings," Plaintiff's "average gross

weekly earnings" are based on Plaintiff's earnings received from Durango-McKinley "during the

Calendar Year immediately prior to the year in which [Plaintiff's] Disability began," in this case,

2007.  For that reason, on August 18, 2008, Andy Ostbloom emailed Sherie Byrd, the following

message:

> Per the policyholder, **this employee made $61,000 for the calendar year 2007**.  On
> 1/1/08, the [employ]ee received a raise and is now at $982.50 per week.  I have sent
> an email to maintenance to have Compass updated.

AR 000415 (emphasis added).

Beginning in July 2008, United of Omaha paid Plaintiff STD benefits until Plaintiff

exhausted those benefits.  Thus, United of Omaha was aware of Plaintiff's reported 2007

earnings in July 2008.  Nonetheless, United of Omaha never questioned Plaintiff's "tonnage"

pay during the twelve weeks Plaintiff received STD benefits or request a higher premium.  Once

Plaintiff was qualified to receive LTD benefits, United of Omaha claimed it had "mistakenly

calculated" Plaintiff's STD benefits.  United of Omaha argues Plaintiff's tonnage pay "falls

squarely within the category of 'extra compensation'" and should not have been included in his

earnings for the purpose of calculating STD benefits.  United of Omaha's Mot. Judgment at 11.

However, United of Omaha never questioned Plaintiff's tonnage pay until it discovered it

had not collected the correct premium.  In fact, after United of Omaha discovered it had not

collected the correct premium it offered "to cover the extra compensation" if Durango-McKinley

paid the **back premiums** for all his employees.  AR000112.  Either tonnage "falls squarely" within the category of extra compensation which is not included in the calculation of "Weekly Earnings" or it does not.  Under the STD policy's definition of "Weekly Earnings," weekly earnings "do not include other extra compensation received from the Policyholder.  "Tonnage pay" should not change its character from earnings "not included in the calculation of Weekly Earnings " to earning "included in the calculation of Weekly Earnings" simply by Durango-McKinley paying back premiums.

## B.  Long Term Disability Benefits

Once Plaintiff exhausted the 12 weeks of STD benefits, Plaintiff was entitled to receive LTD benefits.  Compl.¶12.  The LTD policy provides if Plaintiff is "Disabled and earning less than 20% of [his] Basic Monthly Earnings, the Monthly Benefit while Disabled is the lesser of: 60% of [his] Basic Monthly Earnings, less Other Income Benefits; or the Maximum Monthly Benefit.  The Maximum Monthly Benefit is $2000, less any Other Income Benefits." AR000012.

The LTD policy defines "**Monthly Earnings**" as follows:

Basic Monthly Earnings means Your average gross monthly earnings received from the Policyholder **and verified by premium** We have received during the Calendar Year immediately prior to the year in which Your Disability began, or, if employed for a period less than one year, Your average earnings for the number of months worked during that period.

It includes commissions, and overtime pay received from the Policyholder.  It also includes employee contributions to deferred compensation plans.  It does not include Policyholder contributions to deferred compensation plans, bonuses, shift differential, or other extra compensation received from the Policyholder.

**Note**: Scheduled overtime pay not to exceed a total (base and overtime) of 48 hours per week.

Calendar Year means the 12-month period from January 1 through December 31.

AR000014 (emphasis added).

When United of Omaha discovered it had not been collecting the right premium, it then made the decision to calculate Plaintiff's LTD benefits only on his hourly wages rather than Plaintiff's actual earnings.  United of Omaha argues it "did not calculate Plaintiff's benefits based on that paycheck (paycheck listing $2,401.20 as his regular earnings, AR000134)," rather, it "calculated benefits based on the earnings which the employer reported to United of Omaha and upon which it paid premiums."  United of Omaha Resp. at 9 (Doc. No. 33).  United of Omaha further asserts it "determined that Plaintiff's regular pay $24,273.60, because this was the income reported to United by the employer before his loss."  *Id.* at 10.

In 2007, Plaintiff's gross earnings were $61,881.47, and, of that amount, only **$2,402.20** were "Regular" earnings (hourly wages).  AR000134.  Of the $61,881.47 gross earnings, $55,970.19 was comprised of (1) Per Ton- $53,693.21; (2) Per Ton Rate B- $2,216.98; (3) Per Ton Rate C- $60.00.  AR000134.  The great disparity in Plaintiff's "hourly earnings" versus his "tonnage pay" is due to the fact that Plaintiff, as a truck driver, gets paid by "tonnage rates" not hourly.  AR000132.  Plaintiff only gets paid hourly when he does not have any loads to pick up.  AR000132.  Durango McKinley pays its truck drivers hourly when they are at depo doing paperwork because they have no loads to pick up.  Durango-McKinley believed it was covering Plaintiff for all "tonnage" earnings as that is Plaintiff's occupation.  Plaintiff is not paid to do paperwork but to pick up loads.  And, although United of Omaha claims Durango-McKinley did not report Plaintiff's "tonnage" earnings, the evidence does not support this claim.   An internal United of Omaha document clearly states, **"It is questionable as to whether or not the "per load" amount was <u>initially</u> taken in to consideration when Underwriting rated the case."**  AR000454 (emphasis added).

United of Omaha's explanation that Durango-McKinley chose to insure only his employees' base earnings is not credible. Durango-McKinley insured truck drivers that get paid by a tonnage rate and not an hourly rate. Durango-McKinley's truck drivers' hourly pay varied according to whether they had loads to pick up. In a situation where a truck driver(s) was never paid an hourly wage due to always having loads to pick up, Durango-McKinley would be paying United of Omaha a premium when there were no "base earnings." In this case, were the Court to accept United of Omaha's explanation, Durango-McKinley would be insuring less than 4% of Plaintiff's income. United of Omaha's position is further weakened by the fact that it is willing to include Plaintiff's tonnage pay in its calculation of LTD benefits if Durango-McKinley pays it back premiums. It certainly calls into question the objectiveness of United of Omaha's decision to treat Plaintiff's "tonnage" earning as "extra compensation" when determining Plaintiff's STD and LTD benefits since doing otherwise would have greatly increased United of Omaha's financial obligation.

United of Omaha also argues "[t]he LTD certificate specifically states, on its cover, that the insurance covers "All Eligible Hourly Employees whose Annual Earnings are less than $40,000." United of Omaha Mot. J. at 4 (citing to AR000010). However, as Judge Lynch noted in his June 1, 2010 Order, Plaintiff received one booklet that covered hourly employees with annual earnings over $40,000 and one booklet that covered hourly employees with annual earnings over $40,000. *See* Doc. No. 23 at 7. Moreover, as previously noted, United of Omaha has offered to pay the amount Plaintiff seeks if Durango-McKinley agrees to pay back premiums for **all** hourly employees whose earnings are in excess of $40,000.00. The only manner in which Durango-McKinley's truck drivers would have earnings in excess of $40,000.00 would be as a result of their tonnage pay. Whatever error led to Durango-McKinley paying the wrong

premium, it was not Durango-McKinley that determined the premium. The issue with premiums received is between Durango-McKinley and United of Omaha.  Plaintiff should not be penalized for an error that from the record appears to be due to United of Omaha's underwriters not initially considering tonnage pay.

United of Omaha's insurance policy provides for "an adjustment" when an Insured Person's age has been misstated, and allows the amount of insurance to increase if the United of Omaha receives additional premiums for the Insured Person.  AR000004.  Similarly, in this case, United of Omaha allowed coverage of all of Plaintiff's earnings, including tonnage pay, if Durango-McKinley paid it back premiums.  However, in this case, United of Omaha required Durango-McKinley to pay back premiums for **all** Insured Persons making over $40,000.00. Requiring back premiums for all Insured Persons is unreasonable as only Plaintiff's policy is at issue.

Based on the administrative record, the Court finds that United of Omaha's interpretation of the STD and LTD policies and its decision to exclude "tonnage" earnings by characterizing them as "extra compensation" when determining Plaintiff's STD and LTD benefits is arbitrary and capricious and made in bad faith.

Accordingly, the Court will grant Plaintiff's motion for summary judgment and deny United of Omaha's motion for judgment on the administrative record.  However, the Court will grant in part and deny in part United of Omaha's counterclaim.  The Court will deny United of Omaha's counterclaim as to Plaintiff's STD benefits, and grant United of Omaha's counterclaim that it is entitled to offset Social Security Disability (SSD) benefits against Plaintiff's LTD benefit payments.  The policy is clear that Plaintiff is entitled to benefits less "Other Income," which is defined to include SSD benefits.  AR000333-000334.  Plaintiff also signed a

reimbursement agreement expressly agreeing to reimburse United of Omaha to the extent they duplicated later awarded SSD benefits.  AR000402.  Moreover, Plaintiff did not show that the equitable defense of laches applies to United of Omaha's counterclaim that it is entitled to offset SSD benefits against Plaintiff's LTD benefit payments.

### IV.  Remedy

Having concluded that United of Omaha's decision to exclude tonnage earnings in its calculation of Plaintiff's LTD benefits was arbitrary and capricious, the Court must determine the proper remedy.  ERISA provides the Court discretion in identifying "appropriate equitable relief" where the Court determines the plan's administrator acted arbitrarily and capriciously.  29 U.S.C. §1132(a)(3).  "[W]hen a reviewing court concludes that a plan administrator has acted arbitrarily and capriciously in handling a claim for benefits, it can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits."  *DeGrado* , 451 F.3d at 1175.

There is no need for a remand in this case.   There is no dispute that Plaintiff is disabled and entitled to benefits.  The only dispute involves the monthly LTD benefits to which Plaintiff is entitled based on his Basic Monthly Earnings.  The Court has determined that Plaintiff's LTD benefits must be based on his reported Basic Monthly Earnings which include his tonnage pay.  Accordingly, Plaintiff's LTD benefits should be based on his Basic Monthly Earnings of $6050.00 (AR000413), which yields a LTD benefit of $3630.00 (60% of $6050.00).  United of Omaha shall pay Plaintiff the difference between that amount and the $1,213.68 monthly LTD benefits paid since he began receiving LTD benefits and to pay the proper monthly benefits in the future.  However, United of Omaha may offset Plaintiff's LTD monthly benefit with his SSD benefits.

Additionally, Plaintiff seeks attorney's fees and costs associated with bringing this action.  The Court has discretion to award attorney's fees.  29 U.S.C. §1132(g)(1)("In any action under this subchapter . . . by a participant, beneficiary or fiduciary, the court in its discretion by allow a reasonable attorney's fee and costs of action . . . .").  In order for the Court to consider this issue properly, Plaintiff shall filed a petition for attorney's fees and costs.  United of Omaha will have the opportunity to respond to Plaintiff's application.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion and Memorandum for Summary Judgment **[Doc. No. 32]** is **GRANTED.**

**IT IS FURTHER ORDERED** that United of Omaha Life Insurance Company's Motion for Judgment Based on the Administrative Record is **DENIED.**

**IT IS FURTHER ORDERED** that United of Omaha Life Insurance Company's Counterclaim is **GRANTED** in part and **DENIED** in part.  United of Omaha Life Insurance Company's counterclaim that it is entitled to offset Plaintiff's Social Security Disability benefits against Plaintiff's Long Term Disability Benefit payments is **GRANTED.**   United of Omaha Life Insurance Company's counterclaim regarding Plaintiff's short term disability payments is **DENIED.**

**Dated** this 30th  day of September, 2011.

_____
**MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE**

**<u>Attorney for Plaintiff</u>**:
David Duhigg


**<u>Attorneys for Defendant</u>**:
M. Clea Gutterson
Kallie D. Kuehl